GUCKENHEIMER v. LIBBEY.

1. ATTACHMENTS—MOTIONS TO DISSOLVE.—The question whether notice of motion to vacate an attachment for irregularity should specify the particular irregularity, not considered, because not determined in the Circuit Court.

2. IBID.—FACTS.—Where the Circuit Judge set aside attachments in actions based upon money demands by a general order, without any specific findings of fact, this court is uninfluenced by any findings of fact in the court below.

3. IBID.—IRREGULARITY—AFFIDAVITS.—Attachments were not irregularly issued by the clerk where he had before him the several affidavits of plaintiffs and other persons in the several actions, stating facts and sources of information, which showed that the debts were due, the defendants consciously insolvent and about to go out of business and leave the State, had shipped away personal effects, offered to sell out in bulk at a sacrifice, and made false statements about their affairs.

Before IZLAR, J., Beaufort, November, 1893.

These were seven actions against Libbey Bros. on notes and accounts for goods sold, the several plaintiffs being S. Guckenheimer & Sons, Herman & Kayton, Adams & Howe, Kavanaugh & Brennan, Ehrlich & Bro., William H. Lockwood, and the Savannah Grocery Company. The first six actions were commenced, and the attachments issued on October 6, 1893; the last on October 10, 1893. The complaints were all verified. The affidavit of W. H. Townsend in the first six cases merely stated the amounts due, giving the sources of his information.

In the last case, his affidavit stated on information the general grounds for attachment, referring to the affidavits in the other cases. The other affidavits were all made on October 6, and were as follows:

Personally appeared Abe S. Guckenheimer, who being duly sworn, says: That he is one of the firm of S. Guckenheimer & Sons.; that he knows Messrs. C. F. Libbey and B. F. Libbey, copartners in trade under the firm name of Libbey Bros. They do business as merchants in Beaufort, S. C., and are indebted to his firm for goods sold them in the sum of $356.22; that on the 5th day of October, instant, deponent demanded payment in the presence of his attorney of this account, either in cash, goods or secured notes, and the said Libbey Bros. refused to pay. That he asked them if they could not give him money or goods, could they not sell him a horse which they had. They replied that they could not, as they could not carry on their business without said horse. That after deponent left their store where this conversation took place, one of them went to the house of Mr. Chas. E. Danner, as deponent is informed by Mr. Danner, and wanted to deliver him said horse in consideration of the sum of $135, to be paid in cash. Mr. Danner refused to accept the horse until this morning, though he took a bill of sale last night, the same being receipted. This morning the deponent saw said sum of $135 paid in cash to C. F. Libbey, and then demanded that the proceeds be paid on account of his debt, which was refused. Deponent further has knowledge of the intention of both of said Libbeys to leave the State of South Carolina, and that they are disposing of their goods and removing them from their place of business for the purpose of defrauding their creditors. From a personal examination made this morning, and from their statement of assets, deponent is convinced that their liabilities are in excess of their assets, and that they are consequently insolvent.

Personally appeared H. W. Tilton, who, being duly sworn says: That he is the agent and salesman of the firm of Ehrlich & Bros., of Savannah, Ga.; that he knows C. F. Libbey and B. F. Libbey, who are copartners doing business as merchants in Beaufort, S. C., under the firm name of Libbey Bros.; that

they are indebted to the firm of Ehrlich & Bro. in the sum of two hundred and thirty-eight dollars and sixty-two cents, for goods and merchandise sold them; that he, on the 5th day of October, demanded payment of this account from said Libbey Bros., and offered to receive in payment of this account a horse which they valued at $150, and to give them a clear receipt. That they refused to sell to him the horse, and claimed that they had as good as sold it to Mr. C. E. Danner for $150. That after deponent left them, they went to Mr. Danner, as deponent is informed by Mr. Danner, and gave him a bill of sale of the horse for $135; but that the money was not paid nor the horse delivered until this morning. That after deponent heard that Libbey Bros. had sold the horse and received the money for him, he went to them with Abe S. Guckenheimer, who demanded that this money be turned over and applied to the debts due Guckenheimer & Son and Ehrlich & Bro. Libbey Bros. refused to account for the money or to apply the same to said debts. That he was informed by the clerk of said Libbey Bros., Mr. Sheppard, that they intended going out of business in about ten days, and asked to look out for a job for him, as his employers were closing out their stock with the intention of leaving the State. C. F. Libbey told deponent that he had closed up his house and stored away his furniture during the absence of his wife. And deponent was subsequently informed that said furniture had been shipped by steamer for Boston, Mass.

Personally appeared Judson Lawton, who, being duly sworn, says: That he is the agent of the steamer Alpha, at Beaufort, S. C. That on the 4th day of October, 1893, Messrs. C. F. Libbey and B. F. Libbey shipped on said steamer from Beaufort for Boston, Mass., a quantity of household furniture and other household goods.

Personally appeared Charles E. Danner, who, being duly sworn, says: That on the 5th day of October, 1893, C. F. Libbey, of the firm of Libbey Bros., approached him, offering to sell him a horse. That after 9 o'clock of the night of that day said Libbey came to him and wanted him to take the horse that night for $135. That he declined to take a check on the bank, and said he wanted cash. That he gave a signed bill of

sale, which he gave deponent for the horse; but the deponent did not then receive the horse, and did not pay him the money until this morning, which he did in the presence of Mr. A. S. Guckenheimer. He has seen Libbey Bros., and is satisfied from their statement of their assets that they are insolvent.

· Personally appeared R. R. Legare, who, being duly sworn, says: That on Thursday afternoon, October 5th, 1893, B. F. Libbey, a member of the firm of Libbey Bros., told him they could not stay here on account of Mrs. Libbey's health, and offered to sell him their stock of goods and merchandise in Beaufort, including accounts due them in their business, at and for the price of $1,500; and deponent declined to buy, but told them to let him know before they disposed of it to any one else.

Personally appeared C. E. Danner, who, being duly sworn, says: That on Friday morning, October 6th, 1893, Mr. B. F. Libbey, a member of the firm of Libbey Bros., told him that their stock of goods and merchandise in Beaufort was fully worth, and would bring at forced sale, $2,500, and that the accounts due them were worth $1,000; and called off accounts which they owed various creditors from their books, and which amounted in the aggregate to over $3,400.

When the motions to dissolve were made before Judge Izlar, the objection was interposed that the notices of motion failed to specify any irregularity. This point was not noticed in the order dissolving the attachments.

*Messrs. Elliott & Elliott,* for appellants.

*Mr. W. J. Verdier,* contra.

July 27, 1894. The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.[1] In the month of October, 1893,

---

[1] This is the last opinion filed by Mr. Justice McGowan, his term of office having expired on July 29, 1894. He first took his seat on the Supreme Court Bench in December, 1879, and his first opinion was filed January 7, 1880— *Reynolds* v. *Witte,* 13 S. C., 13. He was thus continuously a justice of the Supreme Court for nearly fifteen years.—REPORTER.

attachments in the above seven cases were issued by the clerk of the court of Beaufort County against the property of the defendants, Libbey Brothers (C. F. Libbey and B. F. Libbey), who were then merchants doing business at Beaufort. The grounds for issuing the attachments were the same in all the cases—removal from the State and disposition or intended disposal of their property, with the intent to defraud their creditors. (See the affidavits of W. H. Townsend, Esq., A. S. Guckenheimer, H. W. Tilton, C. F. Danner, Judson Lawton, and R. R. Legare and others, in the Brief.) On October 19 thereafter, W. J. Verdier, Esq., as attorney for the defendants, gave notice of a motion to "discharge, vacate, and set aside said attachments, as having been improvidently and irregularly issued." The defendants submitted no counter-affidavits, and when the matter came up before his honor, Judge Izlar, at chambers, the objection was made to the hearing by him upon the ground that the notice to vacate did not specify any particular irregularity. His honor refused to hear the motion separately, but said that he would hear argument on the objection and the motion to discharge together, and the hearing proceeded. The judge, after hearing argument, passed an order discharging all the attachments, without making any specific findings of fact or assigning any reasons therefor, as follows: "*It is ordered*, that the attachments issued in the above entitled actions on October 7 and 9, 1893, be and the same are hereby vacated and discharged," &c.

From this order the respective plaintiffs appeal to this court upon the following grounds: "I. That his honor erred in not refusing to hear the motion to vacate, for the reason that the notice specified no particular irregularity. II. That his honor erred in granting the motion to vacate, and in discharging said attachments, for the reason that the affidavits and complaint in each one were sufficient for the issuing of the attachments."

As to the first ground of appeal. It seems that paragraph 3 of Rule 57 of the Circuit Court does declare: "When the motion is for irregularity, the notice or motion must specify the irregularity complained of." It would seem the most natural and better practice, that one called upon to defend

the regularity of a legal proceeding should, at least, be informed as to the particular in which the irregularity is charged. It appears that in the State of New York this rule is applied to motions to set aside attachments. See *Barker* v. *Cook*, 25 How. Pr., 190. But it does not appear that, in this case, the judge ruled upon the subject, and, therefore, it is not properly before this court for adjudication, and we reserve our judgment.

Then as to the second ground of appeal. As the defendants offered no counter-affidavits, there can be no question as to whether the attachments were improvidently issued.

2   There is no conflict of testimony, and the statements of the affidavits filed by the plaintiffs to obtain the attachments may be taken as uncontradicted, and the matter thus reduced to a single point, viz: whether the affidavits filed made a *prima facie* case—that the defendants "were insolvent, and had removed or were about to remove any of their property from the State, with intent to defraud their creditors." First, it is said that this is a question of fact, which has already been decided by the Circuit Judge, and, therefore, this court, in obedience to its well known practice, will not disturb that finding. It is true that this court has great respect for the findings of specific facts by a Circuit Judge; but we do not think that the Circuit Judge here made any such findings in this case. True, he set aside the attachments in the most general terms, without making any specific findings of fact. If he had done so, this court would not have disturbed such findings, unless manifestly against the weight of the evidence. As was said by the late Chief Justice Simpson in the case of *Walker, Evans & Cogswell* v. *Bollman Brothers*, 22 S. C., 530: "In the examination of the testimony bearing upon these questions, we do not feel ourselves governed by the usual rule, where a finding of fact by the Circuit Judge is brought up for review, for the reason stated above, that we are unable to determine what precise questions of fact were found by the Circuit Judge, as involved in the general finding. * * * Had the Circuit Judge found upon these questions, then the rule referred to would be applicable; but in the absence of such distinct findings, the questions are open, and we must necessarily draw our conclusions from the entire

testimony as an original question. To what conclusions does this testimony lead us?"

Then the single question is, whether the affidavits filed with the clerk were sufficient to authorize him to issue the attachments. Concluding that they were sufficient, he issued them, and in doing so, we think he exercised properly the judicial authority reposed in him. "Fraudulent intent, is a matter which can only be proved by unguarded expressions, conduct, and circumstances generally. The allegation that a person has done a certain act 'with a fraudulent intent, must necessarily be based upon information or belief, and, therefore, in such a case, the rule is well settled, that the sources of information, or the facts on which such belief is founded, must be stated.' "[1]   Or, as the [present] Chief Justice expressed it, in the case of *Sharp* v. *Palmer*, 31 S. C., 448: "We do not understand, as may possibly be supposed from expressions used in some of the cases, that a person desiring to procure a warrant of attachment is bound to wait until he can procure the affidavits of the persons who actually saw the acts done, or heard the declarations made, which constitute the grounds of his belief; upon his own affidavit, stating upon information and belief the facts upon which he relies, and giving the name of his informant, he may obtain the warrant, because he thereby furnishes the officer to whom the application is made, the evidence, which will *prima facie* prove the facts relied on, which, though not his own evidence, would be the evidence of a witness competent to prove such facts," &c.

We have read and considered the affidavits carefully, but being numerous, and some of them long, they can not, of course, be set out here; but we hope they may appear in the report of the case. We can do no more than state what we conceive to be the import of the most important of them. (1) The complaint in each of the cases was upon a money demand, and they were similar, except as to the amounts sued for and the names of the plaintiffs; each was sworn to by the plaintiff or his agent. All the affidavits were before the clerk, and

---

[1] *Myers* v. *Whiteheart*, 24 S. C., 196, quoted in *Roddey* v. *Erwin*, 31 S. C., 46.

apply equally to all the cases. We know of no law, which, in suing out an attachment, limits affidavits to the plaintiff in the action. It seems to us there can be no doubt that there was shown *prima facie* a cause of action in each of the cases sued. (2) That the defendants were consciously insolvent, and intended to go out of business in Beaufort, and out of the State in about ten days, as stated by their clerk, Mr. Sheppard, who, in consequence, was looking out for another job, "as his employers were closing out their stock with the intention of leaving the State," we think reasonably appears from the affidavits of A. S. Guckenheimer, H. W. Tilton, C. E. Danner, Judson Lawton, and R. R. Legare, to which special reference is made. (3) The affidavit of Mr. Tilton states that C. F. Libbey told him that he had "closed up his house, and stored away his furniture during the absence of his wife;" and that he was subsequently informed that said furniture had been shipped by steamer for Boston, Mass. (4) The affidavit of Mr. Legare states that on October 5th, Mr. B. F. Libbey told him "they could not stay here on account of Mrs. Libbey's health," and offered to sell their stock of goods and merchandise in Beaufort, including accounts due them in their business, at and for the price of $1,500; yet, on the next morning, October 6th, the same gentleman, Mr. B. F. Libbey, represented to Mr. Danner, believed to be a creditor, that the stock of goods and merchandise in Beaufort was fully worth, and would bring at forced sale, $2,500, and that the accounts due them were worth $1,000, making their assets $3,500. This was so different from his offer of the day before, that we can hardly think that the statement is satisfactorily explained by the supposition that on the first occasion the offer to take $1,500 had reference merely to his interest in the concern. Such is not the language of the affidavit, which says, *"their stock of goods,"* &c.

This case, in its general features, is somewhat like that of *Roddey* v. *Erwin*, 31 S. C., 36, before referred to, in which the court said: "From simply reading the affidavits, with attention to the dates, we can not doubt that the defendant misled the plaintiff as to the disposal of his property, and his intention to leave the State. That the clerk was authorized to issue

the attachment, and that it was error to set it aside as irregularly issued," &c.

The judgment of this court is, that the judgment of the Circuit Court in each of the above stated cases, in setting aside the warrant of attachment, be reversed; and that each of the *seven cases* be remanded to the Circuit Court for such further orders as may be necessary to carry out the conclusions herein announced.